## THE LURLINE.

### HAWKINS v. THE LURLINE.

(Circuit Court of Appeals, Second Circuit. April 18, 1893.)

MARITIME LIENS—REPAIRS OF VESSEL—EVIDENCE.

Libelant sought to enforce a lien on a yacht for alleged repairs and other charges amounting to $376.27, and when an itemized bill was demanded increased his account more than $100. When the truthfulness of his charges was denied, he made no attempt to verify them, and when on the stand did not explain them, nor deny the testimony of a witness

impeaching a part of his account. *Held,* **that a decree for libelant must be modified so as to allow him only such part of the account as defendant had offered to pay before suit.**

Appeal from the District Court of the United States for the Southern District of New York.

In Admiralty. Libel by John P. Hawkins against the steam yacht Lurline to enforce a lien for repairs. William B. Wetmore, claimant. From a decree for libelant, claimant appeals. Modified and affirmed.

John Murray Mitchell, for appellant.
Geo. A. Black, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The libelant, John P. Hawkins, a shipwright at City Island, in the state of New York, filed a lien on June 13, 1890, under the statute of that state, against the steam yacht Lurline, owned by the claimant, William B. Wetmore, for the sum of $476.27, the amount alleged to be due from said owner for the value of work and material furnished and services rendered to the yacht. Upon a libel brought to foreclose this lien the district court for the southern district of New York adjudged that the libelant should recover against the yacht the sum of $376.27, with interest from June 13, 1890, and costs. From that decree this appeal was taken by the claimant.

In the latter part of September, or the early part of October, 1889, the claimant took his yacht to Hawkins' shipyard for repairs, and to be kept through the winter. Neither the amount nor the cost of the repairs was then ascertained, but it was definitely agreed between the claimant and Hawkins that, if the repair bill was over $500 or $600, nothing should be charged for wintering, but if the bill was not over $500 a charge might be made. Ross, the captain of the yacht, remained in the claimant's service until December, and gave instructions to Hawkins as to the nature of the repairs. During the rest of the winter, and until about April 25, 1890, the claimant had no one in charge of the yacht. He was in the west most of the winter, returned to New York several times, saw the boat, and immediately after April 11, 1890, paid the libelant his bill for labor and material to that date, amounting to $2,647.83. At this time the libelant told the claimant that there might be a bill of $50 or $60 more for additional work. Mr. Bell, the claimant's new sailing master, took charge of the boat on April 25, 1890. She was launched within two weeks, and went on her trial trip for a few hours, returning to City Point. From April 25th to May 16th a bulkhead was put up in the engine room, the engine-room companion way was made and fitted, the saloon floor was laid, the bottom and the forecastle were painted, and some jobbing work was done. The bill, in addition to the $100 for wintering, is for work and materials from April 11th to May 16th, which consist of 25 days' joiner work, 21 days' "carpentering,"

20 days' painting, 6½ days' calking, 16 days' labor, and materials amounting to $82.77. The libelant presented bills, not itemized by days, to the claimant, dated May 17 and July 29, 1890, each for $376.27. The claimant requested an itemized bill, which was sent August 8th, and was for $483.45. In this bill a charge of $100 was added for wintering the yacht, and $7.18 were added in the labor and material account. The claimant replied, on August 12th:

"I have made a most careful examination of the work which was done by you since April 12, and find that you have charged me for a large amount of work which I cannot allow, as I find that it was never done for the boat. The amount of these excessive charges is $191.30."

He also objected to the $100 charge as unauthorized, and offered to pay $192.15 in settlement of the account. The answer to the libel was in accordance with the letter of August 12th, and furthermore alleged that the work was done in an unworkmanlike manner, and that the libelant failed to put in limber chains, which had been ordered,—a failure and neglect which resulted in great trouble to the claimant, and in an expense of $300, which sum the claimant sought to recoup against any sum of money due to the libelant. He was thus clearly informed, both before and after the suit was commenced, that the amount of the work which was done after April 11th was an important feature in the case. His only testimony upon this subject, in chief, was in the answer to a general question: "Did you do all the work mentioned in the bill of particulars?" "I did." Upon cross-examination he testified that he was aboard the boat every day during the course of the repairs, and that he could not swear anything positively from his own knowledge, only that the work was done, but the number of days he could not swear to without refreshing his memory by the books. In reply to the question, "Can you swear to any of these items which are on this last bill rendered, of your own knowledge, which are specified in this lien?" he said, "I would have to refer to my books to tell by." In reply to the question, "You can't swear without reference to the books?" he said, "No." The question had no reference to the $100 item. He further said that he based his knowledge that the work was done, and that the material charged was correct, from the books; and in reply to the question, "Without your books, you can't swear to anything in this matter?" he said, "I can swear that the work was done, and material furnished; but to what extent, exactly, I couldn't swear to." He further testified that every night he put in the time book the time, and the men's names who did the work.

Bell, in behalf of the claimant, gave evidence that after April 25th but a small amount of work was done in his presence on the yacht, and that during the last eight or ten days there was nothing for the libelant to do upon the woodwork. In reply the libelant testified nothing in regard to the amount of the work, labor, and material after April 11th. He did say that he superintended the work on the vessel from the time she started until she was finished. It is to be presumed, though the books were not placed

in evidence by the libelant, that they corresponded with the bill of particulars, because the claimant's counsel examined them, but the question upon that part of the case was whether the books and the bill were truthful. It is a singular fact that, when the libelant was expressly notified that the amount of the work and the truthfulness of the bill were at issue, he made no substantial attempt to verify either, or to refresh his recollection as to the extent of the work. If the leading facts had gone out of his memory, they could have been ascertained and stated. He professed in his letter of July 29th to know what had been done, and to be able to explain it; but upon the trial he was silent, except as to the charge for calking, which amounted to $22.75, and that work was done upon the spars. He remained silent after Bell's testimony. This absence of memory, and of an attempt to refresh his memory, or to prove anything with accuracy, either by his own or by independent testimony, are significant that he could not sustain his bill. The $100 item was rejected by the district court, and is only of importance here because it shows the willingness of the libelant to make an untruthful charge. The facts discredit the truthfulness of the books, and as the confidence which in general is not only due, but is given, to the honesty of entries upon shop books of labor furnished and goods sold, which were made contemporaneously with the transactions, and in the ordinary course of business, does not exist in this case, there is nothing from which the amount due the libelant can be ascertained, but the claimant's admission that $192.15 were due.

In regard to recoupment, considerable testimony was given in the district court that limber chains were not furnished, in accordance with the claimant's order; that he was subjected to a large expense in overhauling the boat to supply the omission. We concur with the district court that no sufficient foundation is laid for this claim of damages. It is undoubtedly true that the claimant gave instructions that they were to be put in, but we are satisfied that the libelant did not understand that he was to do this work; otherwise, it would have been done, and charged for.

Nothing can be allowed by way of reduction for damages for unworkmanlike painting in the forecastle, because neither the amount of that part of the painting bill, nor the amount of the damage, appears in the testimony.

The decree of the district court is modified so that a decree should be entered for the libelant for $192.15, with interest from June 13, 1890, without costs in the district court. Costs are to be allowed to the claimant in this court.